**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

Joel G. MacMull
Lauren X. Topelsohn
**MANDELBAUM BARRETT PC**
3 Becker Farm Road
Roseland, New Jersey 07068
Tel.: 973-736-4600
Fax: 973-325-7467
Email: jmacmull@mblawfirm.com
ltopelsohn@mblawfirm.com

*Attorneys for North Jersey Internal Medicine, P.C. d/b/a Advance Medical Group*

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED
2023 FEB 14 P 4: 02

| | |
|---|---|
| NORTH JERSEY INTERNAL MEDICINE, P.C. d/b/a ADVANCE MEDICAL GROUP, a New Jersey corporation,<br><br>*Plaintiff,*<br><br>– vs. –<br><br>SUHEL AHMED, M.D., ALL HEALTH MEDICAL GROUP, P.C., and MARION BOBB-McKOY, M.D.,<br><br>*Defendants.* | CIVIL ACTION NO.<br><br>____________________<br><br>**VERIFIED COMPLAINT AND JURY DEMAND**<br><br>**REDACTED VERSION** |

Plaintiff North Jersey Internal Medicine, P.C. d/b/a Advance Medical Group ("**Plaintiff**" or "**AMG**"), by and through its attorneys, Mandelbaum Barrett PC, hereby alleges against defendants Suhel Ahmed, M.D. ("**Ahmed**"), All Health Medical Group, P.C. ("**All Health**") and Marion Bobb-McKoy, M.D. ("**Bobb-McKoy**") (collectively, "**Defendants**") as follows:

## SUMMARY OF CLAIMS AND RELIEF REQUESTED

1. AMG brings this action seeking an immediate restraints, permanent injunctive relief and monetary damages based on Defendants unlawful trespass of AMG's electronic medical records system, theft of its patients' information, and use of that misappropriated, confidential information to target AMG's patients and induce them to discontinue treatment with AMG and to receive treat with Defendants instead.

2. Defendant Ahmed, a former shareholder of AMG and, upon information and belief, the sole shareholder of defendant All Health, AMG's direct competitor in the highly competitive primary care medical industry, together with AMG's former employee, Bobb-McKoy, planned and executed an unlawful scheme to gain access to AMG's highly sensitive, confidential, and proprietary business information, including but not limited to, its patient information (collectively, "**Confidential Information**"), to unlawfully compete with and obtain an unfair commercial advantage over AMG.

3. Defendants Ahmed and All Health's scheme centered around unlawfully inducing AMG's then-physician employee, defendant Bobb-McKoy, to knowingly violate her contractual and common law duties to AMG and deliver up to Ahmed and All Health, in return for employment with All Health and other benefits, AMG's Confidential Information which wass (until Defendants' theft) restricted to key AMG personnel.

## PARTIES

4. Plaintiff AMG is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business located at 92 Summit Avenue, Hackensack, New Jersey.

5. Defendant All Health is, upon information and belief, a corporation duly organized and existing under the laws of the State of New Jersey with its principal place of business located at 357 Prospect Avenue, Hackensack, New Jersey.

6. Defendant Ahmed is, upon information and belief, All Health's sole shareholder, and a resident of the State of New Jersey, and is also a former shareholder of AMG.

7. Defendant Bohb-McKoy is a former AMG-physician employee, and upon information and belief, a resident of the State of New Jersey residing at 164 Wood Road, Englewood Cliffs, New Jersey and, upon information and belief, based on evidence referenced herein, is currently employed by or otherwise working for defendant All Health.

8. Upon information and belief, All Health was aware of, or should have been aware of, or has otherwise ratified all the conduct alleged herein concerning All Health.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. 1331 because *inter alia* AMG's claims raise a federal question under the 18 U.S.C. § 1836, *et seq.*, the Defend Trade Secrets Act of 2016 ("**DTSA**") and 18 U.S.C.

§ 1030, *et seq*., the Computer Fraud and Abuse Act of 1986 ("**CFAA**"). Pursuant to 28 U.S.C. § 1367, AMG's remaining claims fall within this Court's supplemental jurisdiction because they are so related to the federal claims that they form part of the same case or controversy.

10. The Court has personal jurisdiction over the Defendants as they have committed and are continuing to commit torts, have conducted and are continuing to conduct business within the State of New Jersey, and are citizens and/or residents of New Jersey.

11. Pursuant to 28 U.S.C. § 1391, venue is appropriate because a substantial portion of the events giving rise to this dispute occurred, and Plaintiff sustained damages within this District. Venue is also proper in this District because the written agreements between (a) AMG and Ahmed and All Health, and (b) AMG and Bobb-McKoy expressly provide for venue in this District.

## FACTS

### A. <u>AMG's Business Operations</u>

12. AMG is a privately held internal medicine and primary care practice formed in 2006 by its principal, Dr. Ehab Ibrahim ("**Dr. Ibrahim**").

13. AMG provides preventive and primary services to patients in the highly competitive markets of Hackensack, Paramus and Haledon, New Jersey. More specifically, AMG provides preventative and primary care services to patients of all ages, including services related to medical weight loss, hypertension, adult wellness, diabetes, high cholesterol, asthma, allergy testing, physical exams, sick visits, pre-

admission testing, flu shots, hospital follow-ups, immunizations and workers compensation claims.

14. One of AMG's key competitive advantages in the medical industry is its substantial and longstanding patient relationships.

15. To maximize the benefits of its competitive advantage, AMG has expended significant efforts and resources in procuring strategic assets to retain and expand its market, training and retaining employees, and in implementing and customizing an electronic patient management system to treat patients and protect and store its electronic medical record ("**EMR**") as part of its electronic health record ("**EHR**").

16. In January 2021, AMG invested significant time and resources in identifying, purchasing and installing the athenahealthsoftware EHR and EMR management platform (the "**athenahealth System**") for the purpose of maintaining and protecting its EMR and managing its patient base. Importantly, the athenahealth System is compliant with and provides client-health care practices like AMG substantial EHR records protection compliance with the Health Insurance Portability and Accountability Act ("HIPAA").[1] The purchase of the athenahealth System is but one example of the strategic focus of AMG's business.

---

[1] *See* https://www.athenahealth.com/hitrust ("In support of its mission to build a thriving ecosystem that delivers accessible, high quality, and sustainable healthcare for all, athenahealth has achieved several certifications for all or part of its products and services, including…Electronic Healthcare Network Accreditation Commission (EHNAC) certification through EHNAC demonstrating conformance with federal healthcare reform legislation including HIPAA, HITECH/ARRA, ACA, Omnibus Rule and other applicable state legislation." Last visited February 13, 2023.

17. The virtues of the athenahealth System allow AMG's physicians and staff to input protected patient information, such as patient demographics, test results, medical history, history of present illnesses, and medications, and access and securely maintain that information in electronic format entry.

18. AMG is a covered entity regulated by HIPAA and is required by law to maintain the confidentiality, integrity, and availability of patient health information ("**Protected Health Information**" or "**PHI**").

19. Accordingly, the Confidential Information that AMG maintains on its athenahealth System includes PHI protected by HIPAA and patient personal identifiers such as:

- Patient identity, addresses, registration, billing, preventative screenings, or check-ups;
- Patient appointment and scheduling;
- Tracking patient data over time; and
- Monitoring and improving overall quality of care.

20. AMG's detailed collection, recording and aggregation of patient data is only one feature of its Confidential Information; in addition, AMG expended significant time and energies in customizing various features of the athenahealth System to maximize the efficiency with which AMG is able to meet its patients' needs.

21. AMG's purchase, installation and customization of the athenahealth System, and the resources and energies AMG expended in developing the athenahealth System and the Confidential Information that resides on it, enables AMG to provide a "unique" patient experience by which it tailors patient care

efficiently and effectively, and nurtures, develops and maintains long-term relationships with its patients.

22. In addition, AMG further supports its longstanding patient relationships by hiring and retaining key physician employees and shareholders to manage and operate AMG's practice, including Ahmed and Bobb-McKoy.

## B. AMG Hires Ahmed, the Resulting Litigation and Settlement Agreement

23. AMG hired Ahmed as a staff doctor in 2008.

24. On or about July 1, 2012, AMG, as the "Corporation" and Ahmed, as the "Employee", entered into a Shareholders Employment Agreement (the "**Ahmed Employment Agreement**"), pursuant to which they agreed that the AMG would employ Ahmed according to the "terms, covenants and conditions set forth in" that agreement. (A true and correct copy of the Ahmed Employment Agreement is annexed hereto and incorporated herein by reference as **Exhibit A.**)

25. The Ahmed Employment Agreement includes provisions in which the parties acknowledge the value of AMG's substantial investment in its Confidential Information, business strategy information, and patient relationships, and AMG's need to protect that information and those relationships.

26. Paragraph 11 of the Ahmed Employment Agreement is entitled "Medical Records and Confidentiality" and is two pages in length.

27. In Paragraph 11.A, Ahmed specifically "acknowledge[d]", that his,

> relationship with [AMG] will be one of trust and confidence and that there will be available to Employee patient records and business sources of [AMG].

28. In addition, Paragraph 11.B provides, in relevant part, as follows:

In consideration of the compensation and experience Employee will gain as an employee of [AMG] and in light of Employee's familiarity with the patients of [AMG] and the physicians and other referral sources within the community, Employee expressly agrees to each of the following:

(i) All business records and patient records of [AMG], whether produced by Employee during the course of Employee's employment or otherwise acquired hy [AMG], are the sole property of [AMG]

. . .

(ii) During such time that Employee is employed by [AMG] and for a period of two (2) years following the termination or expiration of [Ahmed's] employment for any reason, the following restrictions apply:

(a) [Ahmed] shall not hire or solicit any employee of [AMG] to leave their employ and to work for anyone in competition with [AMG] or for any other person or entity with which [Ahmed] is associated as an owner, employee, consultant or otherwise.

(b) [Ahmed] shall not: (i) directly or indirectly disclose to any other person, firm, corporation or other entity the names and addresses of any of the patients of [AMG]; (ii) directly or indirectly solicit any business relationship from any patient of [AMG]; or (iii) induce or attempt to influence any patient, insurance company, managed care company, hospital, physician, health care facility or any other entity, firm or person with a referring relationship with [AMG], to alter that referring relationship in any way.

29. In Paragraph 11.D, Ahmed acknowledged as follows:

[AMG] and [Ahmed] recognize that the covenants set forth in this Paragraph 11 are reasonable and properly required for the adequate protection of the business of [AMG] and it is the desire and intent of [AMG] and [Ahmed] that the provisions of this

> Paragraph 11 be enforced by any court with jurisdiction to their fullest extent. In the event that any such covenant is deemed to be unreasonable by a court of competent jurisdiction, [Ahmed] agrees and submits to the reduction of such covenant to such an area or period as the said court shall deem reasonable.

30. Further, in Paragraph 11.E, Ahmed agreed that "in the event [he] is in violation" of the "covenants" contained in Paragraph 11:

> that the time limitation thereof shall be extended for a period of time equal to the period of time during which such breach or breaches occur; and in the event it is necessary to seek relief against such breach or breaches in any court, these covenants shall be extended for a period of time equal to pendency of the proceedings before such court, including all appeals.

31. In addition, in Paragraph 11.F, Ahmed agreed as follows:

> [Ahmed] acknowledges and agrees that any violation of the covenants of this Paragraph 11 would cause substantial, irreparable damage to [AMG] and that it is impossible to measure in money the damages that would be caused to [AMG] by such violation. Accordingly, [Ahmed] acknowledges and agrees that in the event that [Ahmed] violates any of these covenants, [AMG] shall be entitled to obtain injunctive relief to prohibit [Ahmed] from such action and [Ahmed] hereby consents to the entering of a court order compelling such relief. . . . [Ahmed] agrees to indemnify, defend, and hold [AMG] and any of its directors, officers, employees, independent contractors, and other agents free and harmless from any and all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries, and deficiencies, including interest and penalties, attorney's fees, and/or legal costs, fees and expenses arising from or related to any breach by [Ahmed] of any representation, warranty, covenant, obligation or agreement contained in this Paragraph 11.

32. In 2012, Ahmed became a forty percent (40%) shareholder in AMG, and, thereafter, his interest was increased to forty-five percent (45%), and in June 2021 his relationship with AMG terminated.

33. Notwithstanding the restrictive covenants and other conditions of the Ahmed Employment Agreement, upon separating from AMG, Ahmed opened a new medical practice, defendant All Health, which began providing healthcare services in Hackensack, New Jersey. All Health's office is similarly located in Hackensack, less than one mile from AMG's location, and operates in direct competition with AMG.

34. Ahmed also solicited and hired AMG's personnel including, but not limited to, AMG employees Linda Davt ("**Davt**") and Vanessa Arias ("**Arias**"), both of whom were subject to similar restrictive covenants in the respective employment agreements they signed with AMG.

35. Based on Ahmed's conduct in opening and operating All Health, soliciting and hiring AMG's employees, and interfering with AMG's contracts, AMG commenced the litigation styled as *North Jersey Internal Medicine P.C. d/b/a Advance Medical Group v. Suhel Ahmed, M.D., et al.*, venued in the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-130-21, wherein upon AMG's application, restraints were issued and AMG sought injunctive as well as monetary relief (the "**Prior Lawsuit**").

36. Ultimately, AMG, Ahmed and All Health resolved their dispute and entered into a confidential Stock Redemption, Separation and Release Agreement with an effective date of May 13, 2022 (the "**May 2022 Settlement Agreement**"). (A true and correct copy of the May 2022 Settlement Agreement is annexed hereto and incorporated herein by reference as **Exhibit B.**)

37. Pursuant to the May 2022 Settlement Agreement, the parties agreed to rescind the restrictive covenants in Ahmed's Employment Agreement, as well as those contained in AMG's employment agreements with Davt and Arias.

**C. <u>Bobb-McKoy's Employment Agreement with AMG</u>**

38. Well in advance of Ahmed's separation from AMG, AMG hired defendant Bobb-McKoy in 2013, as a "full-time" physician to provide "professional medical services in the field of family medicine" pursuant to a written, employment agreement (the "**BM Employment Agreement**") dated April 1, 2021. (A true and correct copy of the BM Employment Agreement is annexed hereto and incorporated herein by reference as **Exhibit C.**)

39. Pursuant to Paragraph 2.g (2), Bobb-McKoy was required to:

> adhere to the highest medical and ethical standards, and . . . abide by all laws, rules and regulations governing the furnishing of medical services, his/her relationship with patients, and his/her relationship with Employer.

40. In accordance with AMG's efforts to protect its goodwill, reputation, and proprietary and Confidential Information and business relations, the BM Employment Agreement includes appropriate confidentiality and restrictive covenants.

41. Paragraph 9.c of the BM Employment Agreement provides, in relevant part:

> All documents, patients records, notes, computer software, computer programs and other writings, whether copyrightable or not, relating to or dealing with the practice of the Employer, which are prepared or created by the Physician or which may come into his/her possession during or as a result of his/her

> employment, are confidential and the property of the Employer, and upon termination of this Agreement, the Physician agrees to return all such matters and writings and all copies thereof to the Employer except in the case of Dr Bobb-McKoy patients that followed her from "Ideal Family Health" medical practice.

42. Paragraph 10 of the BM Employment Agreement is entitled "Restrictive Covenants, and in subsection 10.a, Bobb-McKoy "expressly agree[d,] . . . in consideration of the compensation, training and experience [she] will gain as an employee of [AMG] and . . . [her] familiarity with [AMG]s patients . . . the Physicians and other referral sources within the community . . . to each of the following" restrictions:

> (1) During the term of this Agreement and for a period of two (2) years following its expiration or termination, for any or no reason (the "Employment Termination Date"), Physician shall not compete with the Employer by engaging in the practice of family/internal medicine within a three (3) mile radius of [AMG's] primary office . . . at 92 Summit Avenue, Hackensack . . . .
>
> (2) During the term of this Agreement, and for a period of one year after the Employment Termination Date, [she] shall not employ, hire or contract for services with any employee of the Employer, nor shall [she] solicit any such person to leave the employee of Employer ... and will not on [her] own behalf, or as an employee or agent of any other person or entity, solicit or contact any patient or referral source not on the approved list in section 10b of Employer except as patients brought to the practice from Ideal Family Health, P.C.

43. In Paragraph 10.b, Bobb-McKoy expressly "agreed that the restrictive covenants" in Section 10:

> are reasonable and necessary restraints that are supported by valid business interests, including the protection of the Employer's trade secrets and confidential business information and the protection of the Employer's relationships with its

> patients and referral sources [and t]herefore... essential to fully protect Employer's valid business interests. The Employer agrees to give ... Bobb-McKoy a list of her patients and their contact information as long as she does not violate the non-compete radius area. A patient of hers is defined as a patient whom she has either exclusively seen hy her at our practice for medical reasons or a patient that she has seen at least twice a year for medical reasons, in any given year in the past 5 years, including any patients from Ideal Family Health, excluding sick visit patients.

44. In Paragraph 10.e, Bobb-McKoy again agreed that the restrictive covenants set forth in Section 10:

> are reasonable and properly required for the adequate protection of the business of Employer and it is the desire and intent of Employer and Physician that the provisions of this Section 10 be enforced by any court with jurisdiction to their fullest extent.

45. Further, in Paragraph 10.e, she "agreed" that:

> in the event of a breach of a restrictive covenant contained herein. Employer shall be entitled to liquidated damages in the amount of up to Three Hundred Thousand Dollars ($300,000.00). The parties agree that this sum is a reasonable amount to compensate the Employer for its damages in connection with a breach of this Section 10.

46. Paragraph 10.f relates to "Confidential Information" and prohibits Bobb-McKoy, "except as required in" the course of practicing medicine "on behalf of" AMG from:

> disclos[ing] to others, or us[ing], any secret or confidential information, knowledge or data (oral, written or in machine-readable form) of the Employer, including, but not limited to, information concerning manuals, patients or operations of the Employer; which the Physician may obtain or bave obtained during the course of or in connection with the Physician's employment by the Employer.

47. Paragraph 11 addresses the "restrictive covenants on the part of" Bobb-McKoy and provides that they:

> shall, to the extent provided therein, survive any termination of this Agreement, and the existence of any claim or cause of action of the Physician against the Employer, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by the Employer.

48. Pursuant to Paragraph 14.d, the BM Employment Agreement "shall be construed under and governed by New Jersey law," and that any "lawsuit,"

> concerning the terms of th[e] Agreement or Physician's employment shall be venued in the Superior Court of New Jersey, Bergen County, or in the United States District Court, District of New Jersey.

49. Paragraph 16.c specifically excludes "any clam made by Employer under Section 10 of this Agreement . . . from the binding arbitration requirement set forth in this Section 16)."

50. Relatedly, Paragraph 14.f provides that

> [i]n the event of any litigation by any party to enforce or defend its rights under this Agreement, the prevailing party, in addition to all other relief, shall be entitled to reasonable attorneys' fees and court costs.

## C. Ahmed and All Health Tortiously Interfere With the BM Employment Agreement by Inducing Bobb-Mckoy to Breach

51. AMG and All Health are direct competitors, competing for the same patient base, in the same markets in the same geographic area.

52. Within months of having executed the May 2022 Settlement Agreement, Ahmed, individually and through All Health, engaged in a scheme to solicit and hire AMG employees and wrongfully obtain AMG's Confidential Information from AMG

then-current employees with the purpose of obtaining an unfair competitive commercial advantage.

53. Ahmed, individually and on behalf of All Health, began his effort to procure AMG's Confidential Information and proprietary patient data in the fall of 2022, when he looked to induce AMG physician, defendant Bobb-McKoy, to leave AMG and begin working for All Health.

54. Upon information and belief, as a consequence of Ahmed's inducement, and while Bobb-McKoy remained an AMG employee, she provided Ahmed and All Health with her login credentials to access AMG's EHR System while still employed by AMG in the fall/winter of 2022, thereby allowing Ahmed and All Health to access, without right or authority, AMG's Confidential Information, including the PHI and HIPAA protected information residing on the athenahealth System, including patient demographics, test results, medical history, history of present illnesses, and medications.

55. At no time did AMG authorize Bobb-McKoy to disclose to All Health or Ahmed the login credentials AMG had provided to her for the purpose of her employment with AMG or its Confidential Information.

56. In view of Ahmed's near 10-year relationship with and prior status as a shareholder and employee of AMG, and moreover as a named defendant in the Prior Lawsuit, Ahmed and All Health knew they were not entitled to access AMG's athenahealth System, directly or indirectly, knew of the confidential and proprietary nature of AMG's Confidential Information, and knew, or at least should have known,

that Bobb-McKoy was subject to the terms of the BM Employment Agreement and owed various common law and contractual duties to AMG.

57. Notwithstanding Ahmed's and All Health's knowledge as stated in the prior paragraphs, upon information and belief, they intentionally urged Bobb-McKoy to breach her common law and contractual obligations to AMG by disclosing her athenahealth System credentials to them and/or the Confidential Information, in exchange for future employment and incentives, including compensation.

58. On January 12, 2023, Bobb-McKoy abruptly tendered her resignation to AMG effective on March 31, 2023, advising that "time ha[d] come" for her to find an opportunity with more financial and equity status and with the opportunity for financial growth (the "**Resignation Notice**"). (A true and correct copy of the Resignation Notice is annexed hereto and incorporated herein by reference as **Exhibit D**.)

59. Dr. Ibrahim in turn asked Bobb-McKoy whether she intended to join the practice of Ahmed and All Health to which she responded that she was "not sure" and that she would have to "weigh [her] options."

60. Dr. Ibrahim soon thereafter, and within hours of her resignation the same day, terminated Bobb-McKoy's ability to access AMG's athenahealth System.

61. On January 13, 2023, AMG's counsel issued a termination letter (the "**January 13 Letter**") to Bobb-McKoy, wherein, AMG accelerated her termination date pursuant to the BM Employment Agreement albeit with compensation and reminded her of her employment and post-employment obligations pursuant to her

agreement, and asked that she return her AMG-issued laptop. (A true and correct copy of the January 13 Letter is annexed hereto and incorporated herein by reference as **Exhibit E**.)

62. On January 18, 2023, Bobb-McKoy returned her AMG-issued laptop to AMG.

63. On January 25, 2023, and in the absence of any acknowledgement from Bobb-McKoy of her receipt of the January 13 Letter, AMG's counsel again wrote to her requesting "written confirmation that [she] ha[s] received this letter, as well as . . . January 13, 2023 [letter]" and that she "understand[s] and remain[s] committed to [her] obligations as set forth in the [Bobb-McKoy Employment] Agreement . . . (the **"January 25 Letter")**. (A true and correct copy of the January 25 Letter is annexed hereto and incorporated herein by reference as **Exhibit F**.)

64. On January 26, 2023, Bobb-McKoy, or someone on her behalf, responded to AMG's counsel's letter from the day before with the following:

> Jan 26, 2023
>
> Mr. Mohamed Nahulsi, Esq.
>
> This is in response to your letter dated January 25, 2023, which was received via email. I am writing to confirm receipt of both letters dated January 13,2023 and January 25,2023 via email. As such, I remain committed to my obligations as set forth on [*sic*] employment agreement dated April 1, 2021 and trust that your client abides by the same.
>
> At your request, I am also forwarding the email to your partner, Joel G. MacMull, Esq. at jmacmull@mblawfirm.com.
>
> Regards,
>
> Marion Bobb-McKoy, M.D.

65. The foregoing email (the **"January 26 E-mail"**) was sent from an e-mail address identified as "Mike Mok <mmoke9@icloud.com.>" (A true and correct copy of the January 26 E-mail is annexed hereto and incorporated herein by reference as **Exhibit G**.)

66. Upon information and belief, Ahmed and All Health gained unlawful access to AMG's Confidential Information via Bobb-McKoy's wrongful and surreptitious disclosure to them of her personal login credentials to the athenahealth System, stole AMG's Confidential Information and have contacted, and are continuing to contact, AMG's patients for the purpose of inducing those patients to leave AMG and receive treatment from All Health.

67. Defendants approach to "stealing an account" is a well-known sales technique which, even when – and entirely unlike the case here no breach is involved, it is usually followed by the new provider slowly raising its rates to a commercially reasonable level once the original relationship is severed. This technique is a powerful competitive tool even if the patient stays with the original provider, because the "low-ball" pricing for services offered by the new provider puts severe price pressure on the original provider that damages the old provider competitively by reducing its profit margin, especially as the process is repeated over time.

68. Where, as here, however, the prospective new provider has Confidential Information about the existing provider's patients, their care, and payment terms

regarding the target patient, the technique is much more devastating to the relationship between the patient and its established provider.

69. For this reason, such valuable information is carefully guarded by those who have such established relationships, and is conveyed only to those in whom they place a high degree of trust and only for the purpose of and to the extent that sharing such information benefits AMG.

70. In fact, AMG's Dr. Ibrahim has learned from at least one of AMG's patients who were solicited by All Health, as further described below, that they intend to stay with All Health.

71. All Health has directly mailed "invitations" to numerous AMG patients by mail, in the form of hard copy marketing "mailers" encouraging AMG's patients to "Switch today to New Jersey's most Award Winning Medical Group" as shown below:



72. Upon information and belief, All Health customized their "invitations" to each respective AMG patient prospect using AMG's proprietary Confidential Information, while purposefully incorporating the word "switch" into its marketing collateral. Critically, these mailers are not delivered as unsolicited third-party U.S. mail or "junk mail"; rather, each mailer is delivered to AMG patients in a personalized envelope bearing the name and return address of All Health's practice located at 357 Prospect Avenue, Hackensack, New Jersey 07601. Examples of these envelopes, which contained the above-referenced mailer and were sent to AMG patients by All Health, are shown below:









4886-6827-5793, v. 2




73. The envelopes shown above were post-marked November 29, 2022, December 18, 2022 and January 19, 2023, respectively.

74. Upon information and belief, the names of AMG patients who have been solicited by All Health and invited to "switch" to the practice include, but are not limited to: [redacted].

75. Recipients of All Health's unlawful solicitations have included AMG patients who only became patients of AMG after the May 2022 Settlement Agreement was signed.

**D. Unauthorized Access by Defendants to AMG's athenahealth System has Been Confirmed**

76. Upon discovery that AMG patients were being actively solicited by All Health, Plaintiffs became suspicious that Ahmed, or someone acting on his behalf, wrongfully and without authorization accessed AMG's contemporary patient list.

77. To determine whether their suspicions could be corroborated with data from the athenahealth System, AMG enlisted the assistance of its IT Manager, Samy

Elshahawi, and determined that running audit reports of logins to the athenahealth System, whether successful or not, could yield additional helpful information.

78. On or about January 16, 2023, Mr. Elshahawi ran the first of several login audit reports of AMG's athenahealth System (the "**Login Audit Report**"). (A true and correct copy of AMG's Login Audit Report dated February 1, 2023 is annexed hereto and incorporated herein by reference as **Exhibit H**.)

79. AMG determined from the Login Audit Report that someone using Ahmed's expired AMG login credentials had tried and failed to log in to AMG's athenahealth System on November 29, 2022 at 3:18 p.m. The Internet Protocol ("IP") address associated with this login attempt – 72.90.182.149 – was at the time unknown to AMG.

80. A Login Audit Report further revealed that AMG former employee, Irvania Pichardo, expired AMG login credentials were also used in an attempt to login into AMG's athenahealth System on November 7, 2022, January 4, 2023, January 10, 2023, and January 31, 2023. (*See* Exhibit H.)

81. These unsuccessful login attempts were made using Ms. Pichardo's expired login credentials and also originated from IP address 72.90.182.149 according to the Login Audit Report.

82. Ms. Pichardo was an AMG employee from approximately 2009 until June 2021, when she left AMG to join All Health. Upon information and belief, Ms. Pichardo is currently a Medical Assistant at All Health.

83. In addition to the foregoing login attempts, the Login Audit Report revealed that several additional attempts – albeit unsuccessful – were made on December 29, 2022 and December 30, 2022, and again on January 20, 2023, using the expired AMG's athenahealth System login credentials for Brenda Vivar ("Vivar"), a former nursing intern that was with AMG between September 2021 and December 2021.

84. Upon information and belief, following Vivar's graduation, she began working for All Health where she remains to this day.

85. Aa additional login audit report was generated February 1, 2023, by the IT support team at Athena Health, the provider of AMG's cloud-based electronic health record management system (the **"Athena Audit Report"**). A true and correct copy of the Athena Audit Report is annexed hereto and incorporated herein by reference as **Exhibit I**).

86. The Athena Audit Report discloses who, between November 2022 and January 2023, ran AMGs athenahealth-System report building module to request and generate reports containing AMG patient PHI, including patient demographics, including name, email address, birthdate, address, zip code, and phone number.

87. An additional audit report was generated on February 1, 2023 setting forth all logins made using Bobb-Mckoy's AMG login credentials, whether successful or unsuccessful, from any IP Address, and that took place between November 5, 2022 and January 13, 2023 (the "**Bobb-McKoy Login Report**"). (A true and correct copy

of the Bobb-McKoy Login Report is annexed hereto and incorporated by reference herein as **Exhibit J.**)

88. AMG owns various IP addresses, including 47.23.82.90 and 74.105.20.40, which are AMG's Hackensack office main and backup line, and 75.99.168.58, which is AMG's Paramus office main internet line.

89. The Bobb-McKoy Login Report discloses, however, that on November 8, 2022, November 9, 2022, November 14, 2022, November 15, 2022, November 21, 2022, November 23, 2022, November 25, 2022, November 28, 2022, November 29, 2022, November 30, 2022, December 5, 2022, December 12, 2022, December 15, 2022, December 16, 2022, December 21, 2022, December 23, 2022, December 26, 2022, December 27, 2022, January 4, 2023, and January 6, 2023, logins were made using Bobb-McKoy's credentials from IP address 72.90.182.149, which is not an AMG-owned or affiliated IP address.

90. During her employment with AMG, Bobb-McKoy would log into the AMG athenahealth System with her credentials from either AMG's Hackensack or Paramus locations in order to perform her usual and customary duties involving the treatment of AMG patients.

91. Bobb-McKoy was at no time during her employment with AMG authorized to request and obtain reports from AMG's athenahealth System containing AMG patient demographic information such as patient name, email address, address, zip code and phone number.

92. Bobb-McKoy was at no time during her employment with AMG authorized to disclose AMG patient demographic information (including AMG patient PHI) from AMG's athenahealth System to Ahmed, All Health, or any individual acting on their behalf or at their direction.

93. The Athena Audit Report discloses that during November 2022 through mid-January 2023, Bobb-McKoy, or someone using Bobb-McKoy's then valid AMG credentials, logged into AMG's athenahealth System, complied a report and then downloaded a report containing AMG patient PHI, including patient demographics, including name, birthdate, address, zip code, and phone number.

94. AMG suspected that IP address 72.90.182.149 used to access the AMG system utilizing Bobb-McKoy's credentials, and then to download the AMG patient information, belonged to All Health.

95. Plaintiffs instructed their counsel to hire a private investigator to physically visit All Health's offices in Hackensack to identify its IP address.

96. Plaintiff's counsel hired Creative Solutions Investigative Services, a private investigation company, to conduct that investigation. Private Investigator Matthew Tintle visited All Health's Hackensack office on January 23, 2023.

97. While at All Health's Hackensack premises, Mr. Tintle observed a posting by which All Health offered and identified a guest Wi-Fi username and password as shown below:




98. After accessing the All Health guest network with his mobile device, Mr. Tintle determined that All Health's IP address is 72.90.182.149 — the same IP address from which defendant Bobb-McKoy's credentials were used to access AMG's system and acquire AMG patient information. (The sworn Declaration of Matthew Tintle dated February 13, 2023 is annexed hereto and incorporated herein by reference as **Exhibit K**).

99. Mr. Tintle determined All Health's IP address is 72.90.182.149 by virtue of accessing three separate publicly available websites. Each of these publicly available websites identified 72.90.182.149, which Mr. Tintle identified as All Health's IP address.

100. Screenshots of Mr. Tintle's findings on the afternoon of January 23, 2023, while he was physically present at All Health's offices in Hackensack are shown below:










101. Approximately contemporaneous with Mr. Tintle's findings, Mr. Elshahawi ran an additional report that combined all attempts to access AMG's athenahealth System, whether or not successful, using Bobb-McKoy's AMG login credentials between November 2022 and January 2023 (the "**Bobb-McKoy Overlay Report**"). (A true and correct copy of the Bobb-McKoy Overlay Report is annexed hereto and incorporated by reference herein as **Exhibit L.**)

102. The Bobb-McKoy Overlay Report discloses numerous brief successful logins from an AMG IP address to AMG's athenahealth System using Bobb-McKoy's credentials, followed by near simultaneous successful logins, again using Bobb-McKoy's AMG credentials, from IP address 72.90.182.149, which Private Investigator

Tintle determined is the same IP address used by All Health's Internet network. (See Declaration of Matthew Tintle attached as Exhibit K hereto).

103. On January 17, 2023, Plaintiffs' counsel retained cyberforensic investigator Mary Frantz of Enterprise Knowledge Partners to acquire and analyze a forensically sound image of Bobb-McKoy's AMG-issued laptop.

104. Ms. Frantz' investigation disclosed that Bobb-McKoy had "wiped" her AMG-issued laptop, including what is believed to be evidence of her improper and wrongful acquisition and deletion of AMG patient information, i.e., AMG's Confidential Information, from AMG's athenahealth System.

105. Using forensically sound technology and methods, Ms. Frantz determined that prior to her departure from AMG on January 12, 2023, Bobb-McKoy had exported files, including files with .csv extensions, but had manually deleted these downloaded files, the precise contents of which were unable to be identified due to the use of a "wiping" software having been used on the laptop.

106. Based upon the foregoing, it is believed that Bobb-McKoy's login credentials were used on at least one occasion by Ahmed, All Health, or both, to successfully login into the AMG's athenahealth System whereupon, at a minimum, AMG's confidential and proprietary trade secret information was used to copy and acquire AMG's patient list, or a significant portion thereof. AMG's patient list was, in turn, used, and continues to be used by Defendants, to the detriment of AMG in the form of mass mailers being sent on behalf of All Health to AMG patients via U.S. Mail.

## E. Defendants Have Wrongfully Appropriated Control of AMG's Facebook Website

107. During 2016, AMG created a Facebook website to market AMG's medical practice. AMG is the owner of that website. On July 3, 2023, Dr. Ibrahim received a written notification that he had been removed as an owner of the AMG Facebook website. (A true and correct copy of this notification is annexed hereto and incorporated by reference herein as **Exhibit M**.)

108. Thereafter, Dr. Ibrahim filed a dispute online with Facebook and attempted to reach Facebook many times, but his attempts at communication with Facebook were ignored and he was forced to create a new Facebook AMG website with the name "Advanced Medical Group."

109. On February 5, 2023, Dr. Ibrahim discovered that the original AMG Facebook website, using the AMG subdomain name of Advance Medical Group, had been stolen by All Health, and was now marketing defendant All Health's and Bobb-McKoy's competing medical services. (A true and correct copy of a screenshot of the Facebook page at issue is annexed hereto and incorporated by reference herein as **Exhibit N**.)

110. The aforementioned Facebook website has more than 2000 "likes" and "followers."

111. AMG's name still appears on the Facebook website stolen from AMG by All Health.

112. Searches on Facebook for Advance Medical Group now confusingly results in hits for defendant All Health's site, (the site All Health stole from AMG), and for AMG's <u>new</u> Facebook website.

113. Since AMG's Facebook website was hijacked by Ahmed or All Health last year, Dr. Ibrahim has been receiving questions from existing AMG patients asking whether he is abandoning his practice, has sold it, or if AMG has merged with All Health.

114. On February 14, 2023, the aforementionedFacebook website was updated to reflect that Bobb-McKoy has joined All Health as a practicing physician, with her photograph featured prominently on the webpage, including in the webpage's header adjacent to "Advance Medical Group" as shown below:



115. All Health's Facebook announcement that Bobb-McKoy has joined the practice, is shown below:

> **Advance Medical Group**
> 1h ·
>
> Board-certified Family Physician, Marion Bobb-McKoy, MD, brings over 25 years of experience in family medicine and preventive care to All Health Medical Group, serving patients throughout Bergen and Passaic Counties in Englewood Cliffs, Hackensack, Paramus, Paterson, South Orange.
>
> Dr. Bobb-McKoy is an East Coast native raised in Brooklyn, New York. She earned her Doctor of Medicine from the State University of New York Health Science Center at Stony Brook and completed her residency training at Southside Hospital in Bay Shore Long Island where she also achieved the title of chief resident.
>
> After completing her residency, Dr. Bobb-McKoy relocated to the Bronx and joined the staff at Montefiore Medical Center Fordham Family Practice. She spent 16 years with the practice, with five spent as the clinic's medical director. Dr. Bobb-McKoy also acted as an assistant professor of medicine at New York's Albert Einstein College of Medicine in the Bronx during this time.
>
> As a member of the All Health Medical Group, Dr Bob McKoy will take over as the Director of Family Medicine and Women's Health. Dr. Bobb-McKoy focuses on preventive care, early intervention, and regular screenings. She's passionate about educating her patients and loves answering questions and easing concerns. The hard work and compassionate care of Dr. Bobb-McKoy have earned her a spot on the Health Grades Honor Roll and consistently rated 5 star on multiple doctors list.
>
> Dr. Bobb-McKoy welcomes anyone seeking primary care to All Health Medical Group. She is now taking new patients.
>
> For appointments:
>
> Call:(551) 309-3555
> Txt: (201) 740-2500
>
> https://www.allhealthmedgroup.com

116. Defendants' ongoing wrongful acts have caused, and continue to cause, significant reputational as well as financial injury to the practice Dr. Ibrahim has built at AMG for nearly two decades, and, as a result of Defendants' actions, he is now fearful of losing the practice and good will of patients that he has provided care to during this time.

**COUNT I**
**VIOLATIONS OF THE DEFEND TRADE SECRETS ACT**
**18 U.S.C. § 1836, *et seq.***
***(Against All Defendants)***

117. AMG repeats and realleges each and every allegation set forth above, as if fully set forth herein.

118. AMG's trade secrets, comprised of its patient lists, HIPPA-protected patient information as inputted by physicians, including demographics, test results, medical history, history of present illnesses, and medications, i.e., the Confidential Information, were acquired and developed at great cost to AMG.

119. The Confidential Information would be difficult, expensive and time-consuming to duplicate independently, if such re-creation could be done at all.

120. The Confidential Information's chief value, however, is its exclusive, proprietary nature, which allows AMG to maintain a competitive advantage over its competitors, including All Health.

121. AMG derives independent economic value from its Confidential Information not being generally known or readily ascertainable by proper means to third parties that could obtain economic value from the use of AMG's Confidential Information.

122. AMG entrusted its Confidential Information to defendant Bobb-McKoy as an employee of AMG for the exclusive purpose of benefiting AMG by providing medical care to its patients and to receive fees for these professional medical services rendered on behalf of AMG.

123. AMG entrusted its Confidential Information to defendant Bobb-McKoy as an employee of AMG on the condition, both explicit and implicit, that Bobb-McKoy protect and maintain its confidentiality during the term of her employment and afterwards.

124. Defendants have a duty to refrain from conveying, misusing or misappropriating AMG's Confidential Information.

125. Defendant Bobb-McKoy breached her duty to AMG by intentionally, knowingly, and by wrongful and improper means, misappropriating AMG's Confidential Information for her personal benefit and that of her current employer, All Health.

126. Unless Defendants are enjoined from using AMG's Confidential Information, the value of a substantial part of AMG's business will be irreparably harmed.

127. As a direct and proximate result of Defendants' misappropriation of AMG's Confidential Information, AMG bas suffered, and continues to suffer, damages in an amount to be proven at trial, but in excess of $75,000.00.

128. In addition to the money damages alleged in the foregoing paragraph, AMG's remedy at law is inadequate and accordingly AMG requires this Court to enjoin and restrain defendants from using AMG's trade secrets.

**COUNT II**
**MISAPPROPRIATION OF TRADE SECRETS**
**NEW JERSEY TRADE SECRET ACT - N.J.S.A 56:15-1 *et seq.***
**(*Against All Defendants*)**

129. AMG repeats and realleges each and every allegation set forth above, as if fully set forth herein.

130. Because the Confidential Information is the exclusive property of AMG, it has been maintained in secrecy by AMG and is not known to the public or within the medical community generally, and is of great pecuniary value to AMG.

131. Defendants have misappropriated, used, continue to use, and will inevitably use more of AMG's Confidential Information which affords AMG a commercial advantage.

132. Such Confidential Information is not known outside of AMG's business, is known only by employees and others involved in AMG's business and is subject to reasonable measures to guard the secrecy of the information. The Confidential Information has been developed with a substantial amount of effort and investment and cannot readily be acquired or duplicated by others. Further the information is valuable to AMG's competitors, such as All Health.

133. Defendants have misappropriated, used, continue to use, and will inevitably use more of AMG's Confidential Information in breach of an agreement, confidence or duty, or as the result of discovery by improper means.

134. Tbe nature of Bobb-McKoy's employment with All Health, and All Health's similar business to AMG, makes the risk of Defendants' disclosure of and

continued use of AMG's Confidential Information on behalf of All Health incredibly high and likely inevitable.

135. AMG has been damaged by Defendants' misappropriation and will continue to suffer irreparable harm unless Defendants are enjoined from engaging in any such further conduct.

136. As a direct and proximate result of Defendants' misappropriation of AMG's trade secrets, AMG has suffered, and continues to suffer, damages in an amount to be proven at trial, but in excess of $75,000,00.

137. In addition to the money damages alleged in the foregoing paragraph, AMG's remedy at law is inadequate and accordingly AMG requires this Court to enjoin and restrain Defendants from using AMG's trade secrets.

**COUNT III**
**COMPUTER FRAUD AND ABUSE ACT**
**18 U.S.C. § 1030 *et seq.***
**(*Against Ahmed and All Health*)**

138. AMG repeats and realleges each and every allegation set forth above, as if fully set forth herein.

139. AMG's System servers are hosted on a "protected computer", as that term is defined in 18 U.S.C. § 1030(e)(2)(B), in that it is hosted by PatientPop on a data storage or communications facility directly relating to and operating in connection with an electronic, magnetic, optical, electrochemical or other high speed data processing device performing logical, arithmetic, and/or storage functions, which is used in and affects interstate commerce and communication.

140. Ahmed and All Health intentionally accessed, and continue to access, AMG's protected computer without authorization, in that they use Bobb-McKoy's login credentials to access such computer, without AMG's permission, in violation of 18 U.S.C. § 1030(a)(2)(C); and, more specifically, with the knowing, conscious and willful intent to obtain and make use of AMG's proprietary and Confidential Information.

141. Bobb-McKoy intentionally accessed AMG's protected computer without authorization, in that she attempted to use, and did use, credentials she obtained as an employee of AMG to access such computer, after her employment with AMG had ended, and her permission to access such computer had been terminated by AMG, in violation of 18 U.S.C. § 1030(a)(2)(C); and more specifically, with the knowing, conscious and willful intent to obtain AMG's proprietary and Confidential Information.

142. Defendants caused losses and damages to AMG exceed $5000 in value in one or more one-year periods, specifically during the period from at least November 2022 through January 2023, as prescribed by 18 U.S.C. § 1030(c)(4)(A)(i)(l).

143. AMG has been damaged by Defendants' misappropriation and will continue to suffer irreparable harm unless Defendants are enjoined from engaging in any such further conduct.

144. As a direct and proximate result of Defendants' unlawful access of AMG's protected computer, AMG has suffered, and continues to suffer, damages in an amount to be proven at trial, but in excess of $75,000,00, including but not limited

to, lost revenues and the cost of responding to Defendants' offenses and conducting damage assessment, and each are liable, jointly and severally to AMG for such damages pursuant to 18 U.S.C. § 1030(g).

145. In addition to the money damages alleged in the foregoing paragraph, AMG's remedy at law is inadequate and accordingly AMG requires this Court to enjoin and restrain Defendants from using AMG's proprietary Confidential Information pursuant 18 U.S.C. 1030(g).

**COUNT IV**
**TORTIOUS INTERFERENCE**
**WITH CONTRACT**
***(Against Ahmed and All Health)***

146. AMG repeats and realleges each and every allegation set forth above, as if fully set forth herein.

147. Bobb-McKoy's Employment Agreement is a valid, binding and enforceable agreement between AMG and Bobb-McKoy.

148. AMG has a protectable interest to enforce and protect its rights under the confidentiality and restrictive covenant provisions set forth in the BM Employment Agreement.

149. Bobb-McKoy's Employment Agreement obligates her to, among other things, refrain from disclosing AMG's Confidential Information during the term of her employment with AMG as well as afterwards.

150. Defendants Ahmed and All Health knew, or should have known, of Bobb-McKoy's Employment Agreement with AMG and her obligations thereunder.

151. Defendants Ahmed and All Health unjustifiably and maliciously interfered with Bobb-McKoy's Employment Agreement with AMG by, among other things, aiding and encouraging Bobb-McKoy's breaches of her common law and contractual obligations to AMG to protect its Confidential Information.

152. By negotiating and entering into an arrangement with Bobb-McKoy, Ahmed and All Health induced disruption of AMG's contractual relationship with Bobb-McKoy, thereby causing injury to AMG.

153. Bobb-McKoy, induced by Ahmed and All Health's incentives to breach her obligations to AMG, thereafter breached her Employment Agreement with AMG.

154. AMG has been damaged by Ahmed and All Health tortious interference with the BM Employment Agreement with AMG and will continue to suffer irreparable harm unless defendants Ahmed and All Health are enjoined from engaging in any such further conduct.

155. AMG has also suffered, and continues to suffer, damages in an amount to be proven at trial, but in excess of $75,000,00.

156. In addition to the money damages alleged in the foregoing paragraph, AMG's remedy at law is inadequate and accordingly AMG requires this Court to enjoin and restrain defendants Ahmed and All Health from engaging in any such further conduct.

**COUNT V**
**TORTIOUS INTERFERENCE**
**WITH PROSPECTIVE BUSINESS RELATIONS**
**(*Against All Defendants*)**

157. AMG repeats and realleges each and every allegation set forth above, as if fully set forth herein.

158. AMG derives its revenues from performing professional medical services to its current and potential patients and has expended significant time and money in developing and maintaining its patient relationships.

159. Defendants are aware of AMG's specific relationships with its numerous patients, including those listed above.

160. Defendants have unjustifiably and maliciously interfered with AMG's relationships with its patients by wrongfully, intentionally and in bad faith using AMG's Confidential Information in violation of BM Employment Agreement with AMG for the purpose of diverting patients and revenues away from AMG.

161. AMG has been damaged by Defendants tortious interference with AMG's relationships with its patients and will continue to suffer irreparable harm unless Defendants are enjoined from engaging in any such further conduct.

162. AMG has also suffered, and continues to suffer, damages in an amount to be proven at trial, but in excess of $75,000,00.

163. In addition to the money damages alleged in the foregoing paragraph, AMG's remedy at law is inadequate and accordingly AMG requires this Court to enjoin and restrain defendants from engaging in any such further conduct.

**COUNT VI**
**BREACH OF CONTRACT**
***(Against Defendant Bobb-McKoy)***

164. AMG repeats and realleges each and every allegation set forth above, as if fully set forth herein.

165. Within the BM Employment Agreement, Bobb-McKoy acknowledged that she would abide by the terms of AMG's confidentiality policy, which, among other things, required her to protect the confidentiality of AMG's Confidential Information during the term of her employment with AMG and beyond.

166. AMG has fulfilled each of its obligations to Bobb-McKoy under the BM Employment Agreement.

167. Upon information and belief, Bobb-McKoy has breached her Employment Agreement by, among other things, (i) failing to protect the confidentiality of AMG's Confidential Information during the term of her employment with AMG as well as afterwards; and/or (ii) facilitating Ahmed and All Health's unlawful misappropriation of AMG's Confidential Information both during the term of her employment with AMG as well as afterwards.

168. Upon information and belief, Ahmed and All Health aided and encouraged Bobb-McKoy's breach of her obligations under the BM Employee Agreement.

169. Bobb-McKoy has refused to comply with AMG's demand that she cease her breaches of the BM Employee Agreement despite AMG's due demand thereof.

170. AMG has been damaged by Bobb-McKoy's aforementioned unlawful conduct and will continue to suffer irreparable harm unless she is enjoined from engaging in any such further conduct.

171. AMG has also suffered, and continues to suffer, damages in an amount to be proven at trial, but in excess of $75,000,00.

172. In addition to the money damages alleged in the foregoing paragraph, AMG's remedy at law is inadequate and accordingly AMG requires this Court to enjoin and restrain Bobb-McKoy from engaging in any such further conduct.

**COUNT VII**
**BREACH OF THE DUTY OF LOYALTY**
***(Against Defendant Bobb-McKoy)***

173. AMG repeats and realleges each and every allegation set forth above, as if fully set forth herein.

174. Bobb-McKoy, as an employee of AMG, was bound as a matter of law to exercise the utmost good faith and loyalty in the performance of her duties during and after her employment with AMG, as required by New Jersey common law.

175. Bobb-McKoy breached her duty of good faith and loyalty to AMG by diverting AMG's patients to Ahmed and All Health and by using AMG's Confidential Information in a manner inconsistent with AMG's interests.

176. AMG has been damaged by Bobb-McKoy's aforementioned unlawful conduct and will continue to suffer irreparable harm unless she is enjoined from engaging in any such further conduct.

177. AMG has also suffered, and continues to suffer, damages in an amount to be proven at trial, but in excess of $75,000,00.

178. In addition to the money damages alleged in the foregoing paragraph, AMG's remedy at law is inadequate and accordingly AMG requires this Court to enjoin and restrain Bobb-McKoy from engaging in any such further conduct.

**COUNT VIII**
**AIDING AND ABETTING BREACH OF A FIDUCIARY DUTY**
**(*Against Defendants Ahmed and All Health*)**

179. AMG repeats and realleges each and every allegation set forth above, as if fully set forth herein.

180. Defendants Ahmed and All Health knew, or should have known, of Bobb-McKoy's duties of good faith and loyalty to AMG.

181. Defendants Ahmed and All Health substantially assisted Bobb-McKoy's breach of her fiduciary duty to AMG when they directed, encouraged, facilitated or permitted Bobb-McKoy during the term of her employment with AMG to (i) breach her BM Employment Agreement with AMG; and (ii) improperly use, including by facilitating the misappropriation of AMG's Confidential Information by Ahmed and All Health, which she obtained through her employment by AMG for the benefit of Ahmed and All Health.

182. Defendants Ahmed and All Health continue to direct, encourage, facilitate or permit Bobb-McKoy to violate her duties and obligations to AMG, and will continue to direct, encourage, facilitate or permit those violations in the future.

183. AMG has been damaged hy defendants Ahmed and All Health aforementioned tortious conduct and will continue to suffer irreparable harm unless they are enjoined from engaging in any such further conduct.

184. AMG has also suffered, and continues to suffer, damages in an amount to be proven at trial, but no less than $75,000,00.

185. In addition to the money damages alleged in the foregoing paragraph, AMG's remedy at law is inadequate and accordingly AMG requires this Court to enjoin and restrain defendants Ahmed and All Healtb from engaging in any such further conduct.

**COUNT IX**
**UNJUST ENRICHMENT**
**(*Against All Defendants*)**

186. AMG repeats and realleges each and every allegation set forth above, as if fully set forth herein.

187. Defendants have profited from the aforementioned acts committed against AMG and therefore, Defendants have been unjustly enriched at AMG's expense.

188. It would be unjust to allow Defendants to retain the benefit of profiting at the expense of AMG as a result of the foregoing conduct.

189. AMG has also suffered, and continues to suffer, damages in an amount to be proven at trial, but in excess of $75,000.00.

190. In addition to the money damages alleged in the foregoing paragraph, AMG's remedy at law is inadequate and accordingly AMG requires this Court to enjoin and restrain Defendants from engaging in any such further conduct.

**COUNT X**
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**
**(*Against All Defendants*)**

191. AMG repeats and realleges each and every allegation set forth above, as if fully set forth herein.

192. In every contract there is an implied covenant of good faith and fair dealing.

193. Through their conduct, as detailed above, Defendants have breached the covenant of good faith and fair dealing implied in their respective agreements, including the May 2022 Settlement Agreement and the BM Employment Agreement.

194. AMG has suffered damages by reason of Defendants foregoing breaches in an amount to be determined at trial.

195. In addition to the money damages alleged in the foregoing paragraph, AMG's remedy at law is inadequate and accordingly AMG requires this Court to enjoin and restrain Defendants from engaging in any such further conduct.

**COUNT XI**
**CIVIL CONSPIRACY**
**(*Against All Defendants*)**

196. AMG repeats and realleges each and every allegation set forth above, as if fully set forth herein.

197. All three Defendants agreed with one another to commit the tortious conduct set forth above.

198. Each defendant intentionally and knowingly took steps alleged above in furtherance of their agreement to injure AMG by, *inter alia*, the unauthorized use of AMG's Confidential Information, in the process depriving AMG of its position of superior commercial advantage.

199. As a direct result of Defendants' aforementioned unlawful actions, AMG has been injured in an amount to be determined at trial.

**COUNT XI**
**ACTION FOR AN ACCOUNTING**
***(Against Defendant All Health)***

200. AMG repeats and realleges each and every allegation set forth above, as if fully set forth herein.

201. Defendants have profited from the unlawful use of AMG's Confidential Information and the diversion of corporate opportunities that belong to AMG.

202. AMG is entitled to an accounting of all monies received by Defendants concerning transactions conducted on behalf of or for the benefit of them in violation of Bobb-McKoy's Employment Agreement and duties of loyalty concerning all AMG patients wrongly diverted to Ahmed and All Health.

**PRAYER FOR RELIEF**

WHEREFORE, North Jersey Internal Medicine, P.C. respectfully requests an order and judgment against each of the Defendants:

A. That a preliminary injunction be issued enjoining Defendants; each of the defendants' officers, agents, servants, employees and attorneys; and any other persons who are acting by, through or at the discretion of any defendant, from:

i. Using any of AMG's trade secrets, proprietary or Confidential Information and certifying that any and all documents containing such information have been permanently destroyed;

B. That after trial, such injunction be made permanent;

C. Awarding North Jersey Internal Medicine, P.C. actual, compensatory, liquated and punitive damages to the fullest extent allowable by law;

D. Awarding North Jersey Internal Medicine, P.C. pre- and post-judgment interest to the fullest extent allowable by law;

E. Awarding North Jersey Internal Medicine, P.C. reasonable costs and attorneys' fees to the fullest extent allowable by law; and

F. Granting such other and further relief as this Court deems just and equitable.

**JURY DEMAND**

North Jersey Internal Medicine, P.C. hereby demands a trial by jury of all claims herein so amenable.

Respectfully submitted,

Joel G. MacMull
Lauren X. Topelsohn
**MANDELBAUM BARRETT PC**
3 Becker Farm Road
Roseland, New Jersey 07068
Tel.: 973-736-4600
Fax: 973-325-7467
Email: jmacmull@mblawfirm.com
ltopelsohn@mblawfirm.com

*Attorneys for North Jersey Internal Medicine, P.C. d/b/a Advance Medical Group*

February 14, 2023